1
2
3
4
5
6
7
8
9
10
11
12

**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| DEIRDRE SANDERS,<br><br>        Plaintiff,<br><br>  v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No.: 11-CV-04428 LHK

ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY
JUDGMENT; ORDER GRANTING IN
PART AND DENYING IN PART
PLAINTIFF'S MOTIONS

Plaintiff Deirdre Sanders ("Plaintiff") brings this action to obtain review of the Social

Security Administration Commissioner's final decision denying her claim for disability benefits.

Plaintiff seeks an order reversing the final decision of the Commissioner and awarding benefits, or

alternatively remanding for a new hearing.  Presently before the Court is Defendant's motion for

summary judgment.  ECF No. 18 ("Mot.").  Also before the Court are three motions styled: (1)

"Emergency Motion FRC Proc 59(e), § 1252, §§ 205(u)(2) and 1631(e)(7)(B),1129 and GN

03101.160 Res Judicata"  ("Emergency Motion")[1]; (2) "MOTION for Default Judgment, Serving

---

[1] This Motion was filed in hard copy and is not available on ECF.

Other Process, Stay of Proceedings to Enforce Judgment by the Court" (ECF No. 20); and (3) "MOTION in Support of Cross Motion Defendant's Response to Plaintiff's Emergency to Motion" (ECF No. 21). Having considered the parties' papers and the administrative record, the Court DENIES Defendant's motion for summary judgment. Plaintiff's motions are GRANTED to the extent that they request that the Court remand this case so that the ALJ can make findings as to: (1) what if any limitations would arise from Plaintiff's diarrhea; (2) how any limitations arising from Plaintiff's diarrhea would affect Plaintiff's capacity for sedentary work; (3) the significance of Dr. Hyunh and Dr. Sanchez's reports; and (4) for a further determination as to whether Plaintiff's RFC allows Plaintiff to work as a clerk/cashier and/or assembler. Plaintiff's motions are otherwise DENIED.

## I.       BACKGROUND

### A.       Factual Background

Plaintiff was born in 1960, and was forty-one years old on the alleged disability onset date of August 1, 2002. Administrative Transcript ("Tr.") 153. Plaintiff has a high school education, and, prior to the onset of Plaintiff's alleged disability, Plaintiff worked as an accountant. *Id.* 30.

On July 11, 2002, Plaintiff suffered a fall at work, and she was taken to the emergency room for evaluation of right wrist pain. *Id.* 56. Plaintiff claims that subsequent to this fall, on August 1, 2002, she began experiencing severe, disabling sharp pains in the right arm and elbow attributed to the fall and to carpal tunnel syndrome. *Id.* 19.

In approximately October 2002 Plaintiff applied for disability benefits based on her wrist pain. *Id.* 149. Over the years, as Plaintiff's case has progressed, Plaintiff has claimed additional impairments including: mild cervical degenerative disc disease, diarrhea, alcohol abuse, depression, lower back disease, cognitive dysfunction, fibromyalgia, visual problems/glaucoma, sore throat, headaches, sleep disorder, and general malaise. *Id.* 23. Additionally, in her filings with this Court, Plaintiff has claimed that she suffers from "ovarian tumors (suspect cancer)" (this claim appears to be based on the fact that Plaintiff was diagnosed with an ovarian cyst which would

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   likely resolve itself in 1-3 days) and "duress." *See e.g* Compl. at 20[2]; Emergency Motion at 21.

2          Plaintiff has seen a number of doctors over the years including orthopedists,

3   opthamologists, psychologists, and psychiatrists.  While the Court will not endeavor to review the

4   extensive medical record here, the Court notes that the medical evidence includes *inter alia* reports

5   from: (1) Dr. John Hotson (November 2002) (Tr. 542); (2) Dr. Audrey Kuang (March 2003 and

6   February 2004) (*id.* 458, 958); (3) Dr. Lara A. Salamacha (February 2004) (*id.* 459); (4) Dr. Robert

7   E. Lieberson, Plaintiff's treating physician (April 2004 and May 2004) (*id.* 474, 959); (5) Dr. Maria

8   Matsumoto (May 2004) (*id.* 484); (6) Dr. Ubaldo Sanchez (psychologist) (October 2004) (*id.* 863);

9   (7) Dr. Murray Krelstein (psychiatrist) (October 2004) (*id.* 645); (8) Dr. Nhi Hyunh (psychiatrist)

10  (November 2004) (*id.* 718); (9) Dr. Ute Kollath (psychologist) (May 2005) (*id.* 724); (10) Dr. Khoa

11  Nguyen (opthamologist) (March 2007) (*id.* 865); (11) Dr. Ahmed El-Sokkary (psychologist)

12  (March 2007) (*id.* 867); (12) Dr. Lakshmi Madireddi (orthopedist) (November 2007) (*id.* 876); (13)

13  Dr. Maria Acenas (psychiatrist) (November 2007) (*id.* 870); and (14) Dr. Harvey Rockman

14  (November 2007) (*id.* 948).

15         As will be discussed below in connection with the Court's review of the Administrative

16  Law Judge's findings, these reports fail to confirm many of Plaintiff's purported impairments

17  including lower back disease, fibromyalgia, glaucoma, sore throat, neuropathy, chronic pain,

18  ovarian cancer, and duress.  Moreover, Plaintiff's doctors for the most part found that, while

19  Plaintiff has some limitations with respect to Plaintiff's use of her right hand, as of the time of the

20  Administrative Law Judge's decision, Plaintiff was capable of carrying out basic work activities

21  including: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

22  (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

23  instructions; (4) using judgment; (5) responding appropriately to supervision, co-workers and usual

24  work situations; and (6) dealing with changes in a routine work setting.  *See infra* Section III(A)(4)

25  (reviewing evidence concerning Plaintiff's residual functional capacity"); 20 C.F.R. § 404.1521(b).

26  The Court additionally notes that at least one doctor affirmatively diagnosed Plaintiff as

27  _____
    [2] References to pages in the petition for relief ("Compl.") refer to the page numbers affixed by
28  ECF, not the page numbers given by Plaintiff.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

"[m]alingering" (Tr. 869) (report of Dr. El-Sokkary).

**B.     Procedural History**

      **1.     Proceedings Before the Administrative Law Judge and the Appeals Council**

As set forth above, Plaintiff first applied for disability benefits in approximately October 2002. *Id.* 149.  Administrative Law Judge Brenton L. Rogozen denied Plaintiff's claim on April 16, 2004. *Id.* 129.  The stated reason for denying Plaintiff's claim was that "[w]hile [her] condition [might] cause [her] pain at times, [the] records show[ed] that [Plaintiff] [was] still able to use [her] hands for basic grasping and handling of objects," and could therefore still "perform some types of work." *Id.* 129.

In May 2004, Plaintiff filed a request for reconsideration of her claim (*id.* 133) and a Disability Report Appeal (*id.* 182).  In the Disability Report Appeal, Plaintiff added new ailments including: (1) numbness in legs and on her right side; (2) chronic pain in her back, neck and shoulder; (3) depression; (4) sleeplessness; and (5) "anterior disc bulge." *Id.*

Judge Rogozen denied Plaintiff's request for reconsideration on October 5, 2004. *Id.* 134. Plaintiff subsequently filed another request for a hearing. *Id.* 140.  Judge Rogozen granted Plaintiff's request and held a hearing on April 5, 2005. *Id.* 1056-81.   On July 25, 2005, Judge Rogozen denied Plaintiff's disability claim and found that she was not eligible for disability because she could perform unskilled sedentary work. *Id.* 113-124.

Plaintiff appealed this decision to the Appeals Council, which granted Plaintiff's request for review and remanded Plaintiff's claims for a new hearing to: (1) address the treating source opinion, which the Appeals Council found had not been fully addressed at the previous hearing, and (2) collect additional evidence "regarding the extent to which the claimant's limitations [with respect to her right hand] erode the occupational base for sedentary work…." *Id.* 81-83.

On February 14, 2007, after the case had been remanded by the Appeals Council, Judge Rogozen held a hearing.  Tr. 1087-1113.  On July 18, 2007, Judge Rogozen again denied Plaintiff's disability claim. *Id.* 51-64.  Plaintiff appealed the denial, and on October 2, 2007, the Appeals Council remanded Plaintiff's case to Judge Rogozen with instructions to obtain supplemental

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

1    evidence from a vocational expert to "identify examples of . . . jobs" for which Plaintiff was

2    suitable, and also to "[o]btain available updated treatment records." *Id.* 41-43.

3           A different Administrative Law Judge, Judge Frederick C. Michaud (hereafter "ALJ"), held

4    a third hearing on June 19, 2008. *Id.* 1114-1134. At the time the ALJ was considering the case,

5    Plaintiff's alleged impairments included: carpal tunnel syndrome, mild cervical degenerative disc

6    disease, diarrhea, alcohol abuse, depression, lower back disease, cognitive dysfunction,

7    fibromyalgia, visual problems/glaucoma, sore throat, headaches, sleep disorder, and general

8    malaise. *Id.* 23. On January 28, 2009, the ALJ denied Plaintiff's disability claim. *Id.* 13-31.

9                 **2.       Proceedings and Filings Before the Ninth Circuit and This Court**

10          Plaintiff did not ask the Appeals Council to review the ALJ's January 2009 decision and

11   instead filed a civil suit in the district court. *See* Case No. 09-cv-00974-JSW (N.D. Cal. 2009).

12   United States District Judge Jeffrey S. White dismissed the case for lack of jurisdiction because

13   Plaintiff had not appealed the ALJ's decision to the Appeals Council. Nevertheless, the Appeals

14   Council treated Plaintiff's filing before the district court as a timely request for review of the ALJ's

15   decision. Tr. 8. The Appeals Council found no grounds for remanding the ALJ's 2009 decision

16   and issued a notice of denial on March 24, 2011. *Id.* 8-9.

17          After receiving the notice of denial from the Appeals Council, Plaintiff filed a petition for

18   review with the Ninth Circuit Court of Appeals. *See Sanders v. Social Secutiy Comm'r*, 11-71705

19   (9th Cir. 2011). The Ninth Circuit found that it lacked jurisdiction to consider Plaintiff's case and

20   transferred the case to this Court on September 6, 2011.

21          After the case was transferred to this Court, Plaintiff's petition for review became

22   Plaintiff's complaint in this matter. *See* ECF No. 1 ("Compl."). Plaintiff's petition for review is 44

23   pages long and attaches a number of exhibits; the nature and relevance of many of the allegations

24   and arguments contained therein are difficult to discern. *See e.g.* Compl. at 7 (alleging judicial

25   misconduct and public corruption based on "Steven Sanchez and family vigilante practices"); *id.*

26   ("Including cohered/collaborated witness statement from a convicted unlicensed contractor his

27   family, customer's son, drug addicts, convicts, career criminals, relatives, boy/girl friends of

28

**United States District Court**
For the Northern District of California

5

Sanchez /Martinez family tenants….”); *id.* at 8 (“**Argument** the Appellate Court issued an

*INVALID* order of judgment without… Not having *the proper jurisdiction* citing: The time for

appealing a judgment is *jurisdictional*….” (emphasis in original)).

On February 7, 2012, Plaintiff filed her Emergency Motion.  The Emergency Motion is 91

pages long, well in excess of the 25-page limit set forth in Local Rule 7-2(b), and attaches

numerous exhibits.  Plaintiff’s Emergency Motion similarly includes a number of arguments whose

nature is difficult to discern.

On March 6, 2012, Defendant moved for an order extending Defendant’s time to respond to

the Emergency Motion.  ECF No. 13.  The Court granted Defendant’s motion.  ECF No. 15.

Defendant did not file a response to the Emergency Motion.  Instead, on April 9, 2012, Defendant

filed the instant motion for summary judgment.

Plaintiff did not file a formal opposition to Defendant’s motion for summary judgment.

Plaintiff did, however, file two additional motions.  The first motion, filed on April 12, 2012, is

styled “MOTION for Default Judgment, Serving Other Process, Stay of Proceedings to Enforce

Judgment by the Court.”  ECF No. 20 (“Motion for Default Judgment”).  The second motion, filed

on April 24, 2012, is styled “MOTION in Support of Cross Motion Defendant's Response to

Plaintiff's Emergency to Motion.” ECF No. 21 (“Cross Motion”).  Each of these motions is

approximately 45 pages in length.   Like Plaintiff’s petition for review, the nature of Plaintiff’s

various motions and the relevance of the arguments contained therein are somewhat difficult to

discern.  *See e.g.* ECF No. 20 at 10 (alleging that Defendant “block[ed] access to [Plaintiff’s] cell

phone and email records,” “block[ed] [Plaintiff’s] access to [p]ublicly owned computers,” caused

the “undisclosed (Cash) sale of [Plaintiff’s] deceased mother[‘s] property,” and “[u]nlawfully

photograph[ed] [Plaintiff] with assistance of the Grandos family of 506 Loumena Ln”); ECF No.

21 at 10 (alleging that Plaintiff has “become a victim of the Department of Homeland Security,

FBI, and Social Security Administration”).

Defendant did not respond to Plaintiff’s Motion for Default Judgment or Cross Motion.

Defendant also did not file a reply in support of Defendant’s motion for summary judgment.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT’S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF’S MOTIONS

### 3.    The Excess Pages of Plaintiff's Motions are Stricken

Civil Local Rule 7-2(b) provides that a motion must "not exceed[] 25 pages in length."  In order to file a brief that exceeds 25 pages in length, a party must obtain permission from the Court. Here, Plaintiff filed a request that Plaintiff be allowed to file an oversized brief in connection with the Emergency Motion.  *See* ECF No. 10.  However, this request was never granted.  Moreover, Plaintiff never requested permission to exceed the 25 page limit with respect to her Motion for Default Judgment or Cross Motion.  Accordingly, the Court STRIKES all pages beyond the 25th page of each of Plaintiff's three motions.  This Order will address all arguments that the Court can discern from Plaintiff's petition for review and from the first 25 pages of Plaintiff's Emergency Motion, Motion for Default Judgment, and Cross Motion.

## II.    LEGAL STANDARDS

### A.    Standard for Reviewing the ALJ Decision

The Court has the authority to review the ALJ decision pursuant to 42 U.S.C. § 405(g). The Court may only disturb the ALJ decision if it is unsupported by substantial evidence in the record as a whole or if it is not an application of the proper legal standard.  42 U.S.C. § 405(g); *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Vertigan*, 260 F.3d at 1049 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's conclusion.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### B.    Standard for Determining Disability

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must also be so severe that a claimant is unable to do her previous work, and cannot "engage in any other kind of substantial gainful work which exists in the national economy," given her age, education, and work experience.  42 U.S.C. § 423(d)(2)(A).

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

"The claimant carries the initial burden of proving a disability." *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). "A claimant is disabled if she proves: 1) that she is not presently engaged in a substantial gainful activity; 2) that her disability is severe; and 3) that her impairment meets or equals one of the specific impairments described in the regulations." *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002). "Even if the specific impairments described in the regulations do not apply, a claimant can make out a prima facie case of disability if she proves, in addition to the first two requirements, that she is not able to perform any work that she has done in the past." *Id.* "If the claimant makes out a prima facie case, the burden shifts to the Commissioner to establish that the claimant can perform a significant number of other jobs in the national economy." *Id.*

The ALJ evaluates Social Security disability cases using a five-step evaluation process. 20 C.F.R. § 404.1520:

1) The ALJ must first determine whether the claimant is presently engaged in substantially gainful activity. 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. Otherwise, the evaluation proceeds to step two.

2) The ALJ must determine whether the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520(c). If not, the claimant is not disabled. Otherwise the evaluation proceeds to step three.

3) The ALJ must determine whether the claimant's impairment or combination of impairments meets or medically equals the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d). If so, the claimant is disabled. Otherwise, the analysis proceeds to step 4.

4) The ALJ must determine the claimant's residual functional capacity in light of any limitations from the claimant's impairments. 20 C.F.R. § 404.1520(e). If the claimant's residual functional capacity allows the claimant to perform work that the claimant has done in the past, the claimant is not disabled. If the claimant cannot perform the work, the evaluation proceeds to step five. 20 C.F.R. § 404.1520(f).

8

5)  In this step, the Commissioner has the burden of demonstrating that the claimant is not disabled.  The Commissioner must show that the claimant can perform some substantial gainful work in the national economy, considering a claimant's age, education, and vocational background.  20 C.F.R. § 404.1520(g)(1).

## III.   ANALYSIS

### A.   The ALJ's January 2009 Decision and Plaintiff's Challenges to the ALJ's Decision

The ALJ found that Plaintiff has not engaged in substantial gainful activity (step one) since August 1, 2002, the alleged onset date of Plaintiff's disability.  Tr. 23.  The ALJ also found that Plaintiff suffered from multiple medically determinable "severe" impairments (step two), including a history of right carpal tunnel syndrome, mild cervical degenerative disc disease without radiculopathy, diarrhea, alcohol abuse, and depression.  *Id.*  The ALJ then found that none of Plaintiff's ailments met "or equal[ed]" one of the impairments in the Listing of Impairments (step three).  *Id.* 25.  However, the ALJ found that because of Plaintiff's residual functional capacity ("RFC"), Plaintiff would not be able to perform her past relevant work as a bookkeeper (step four).  *Id.* 30.  Thus, the ALJ proceeded to step five.  As to this step, the ALJ determined that Plaintiff's RFC would allow the Plaintiff to carry out a significant range of "unskilled and sedentary occupations" and that jobs existed in the national economy that fit this requirement, such as parking clerk, cashier, and assembler (step five).  *Id.* 31.  In determining Plaintiff's RFC and capacity for sedentary work, the ALJ also determined that Plaintiff's statements regarding the intensity and severity of Plaintiff's symptoms were not credible.  *Id.* 29-30.  Because Plaintiff was capable of performing sedentary work, the ALJ concluded that Plaintiff was not disabled.  *Id.*

While Plaintiff has not submitted a formal opposition to Defendant's motion for summary judgment, and as set forth *supra*, Plaintiff's various motions are not entirely clear, the Court surmises that Plaintiff disputes the ALJ's findings regarding: (1) which of Plaintiff's claimed maladies constituted severe impairments (step two) (*see* ECF No. 21 at 20); and (2) whether any of these impairments met the requirements of the Listing of Impairments, 20 C.F.R. § 404, Subpart P, App. 1. 20 C.F.R. § 404.1520(d) (step three) (*see* ECF No. 21 at 20 (arguing that Plaintiff's

9

**United States District Court**
For the Northern District of California

1    fibromyalgia met or equaled a listing set forth in the regulations)).  Plaintiff also appears to dispute

2    the ALJ's conclusion that Plaintiff was not entitled to disability benefits because Plaintiff's RFC,

3    taking into account Plaintiff's impairments would allow Plaintiff to work in an unskilled sedentary

4    position such as a parking clerk, cashier, or assembler.  *See* Compl. at 22.  Finally, Plaintiff appears

5    to dispute the ALJ's finding that Plaintiff was not credible.  *See id.* 24.  The Court addresses each

6    of the disputed findings beginning with the ALJ's credibility determination.

7              **1.       Substantial Evidence Supports the ALJ's Credibility Determination**

8              As a threshold matter, the Court addresses the ALJ's credibility determination as it has

9    implications with respect to the ALJ's other findings.  The ALJ found that Plaintiff's

10   representations regarding the persistence, intensity, and limiting effects of her symptoms, including

11   pain, were not credible.  *See id.* 28-30.  The Court finds that the ALJ's credibility determination

12   was supported by substantial evidence.

13             As stated in *Fair v. Bowen*, "[a]n ALJ cannot be required to believe every allegation of

14   [disability], or else disability benefits would be available for the asking, a result plainly contrary to

15   the [Social Security Act]."  *Id.*, 885 F.2d 597, 603 (9th Cir. 1989).  Thus, an ALJ is required to

16   make a credibility finding as to the claimant's subjective statements.  *Thomas*, 278 F.3d at 958-59.

17   The ALJ's credibility finding must be supported by the record.  *Id.* at 958.  However, when there is

18   affirmative evidence of malingering, such evidence provides strong support for an ALJ's decision

19   to disregard a claimant's subjective complaints.  *See Merillat v. Comm'r of Soc. Sec. Admin.*, 350 F.

20   App'x 163, 166 (9th Cir. 2009) ("Affirmative evidence of malingering supports an adverse

21   credibility finding."); *Cf Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (" Once a

22   claimant meets the *Cotton* test and there is no affirmative evidence suggesting she is malingering,

23   the ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he

24   makes specific findings stating clear and convincing reasons for doing so").

25             Here, as recognized by the ALJ, Dr. El-Sokkary affirmatively diagnosed "[m]alingering"

26   (Tr. 869), a diagnosis which strongly supports a finding that Plaintiff is not credible.  The ALJ's

27   adverse credibility determination was also supported by the fact that at least one of Plaintiff's

28

                                                      10

statements was inconsistent with the medical evidence.  Specifically, Plaintiff represented that she was unable to walk more than a half block, but medical reports from the same approximate time period state that Plaintiff had an unrestricted ability to stand, walk, and sit (*id.* 199, 461).

The ALJ also found that Plaintiff's numerous "self-pitying" remarks at the hearing undermined her credibility.[3]  Indeed, the Court observes that there were a number of instances during the hearing where Plaintiff appeared to exaggerate her condition and impairments.  For example, at one point, Plaintiff claimed she had "cancer of the bowel."  *Id.* 1123.  However, when pressed about her condition, Plaintiff immediately downgraded her description of her condition to irritable bowel syndrome ("IBS").  *Id.*  Plaintiff later claimed that she was "going to die just like [her] mother" (who actually has bowel cancer), and stated "[m]aybe we'll die together and then nobody has anything to worry about."  *Id.* 1125.  Furthermore, when Plaintiff was asked when her ailments first became so bad that she could not work, Plaintiff stated: "[a]lways hurt and the people don't listen… All they do is bill me and try to sue me and they don't fix nothing and all they do is cheating."  *Id.* 1135.  Plaintiff made a number of other similar remarks during her hearing.[4]

In light of the affirmative evidence of malingering, Plaintiff's representations regarding her limited ability to walk, and Plaintiff's statements at the hearing, the Court finds that the ALJ's adverse credibility determination was supported by substantial evidence and that the ALJ was entitled to discount Plaintiff's subjective statements regarding the severity and intensity of her various symptoms.  Next, the Court addresses the ALJ's determinations regarding which of Plaintiff's impairments were severe.

---

[3] The ALJ identified a number of other grounds for doubting Plaintiff's credibility.  *See* Tr. 29-30. However, the Court finds that the grounds set forth above were sufficient to support the ALJ's determination.

[4] Moreover, in Plaintiff's filings with this Court, Plaintiff claimed that she suffers from "ovarian tumors (suspect cancer)" (Compl. at 20), when, in fact, Plaintiff was diagnosed with a "3.6 cm right ovarian cyst," which was expected to clear within "1-3 days."  *See* Emergency Motion, Ex. 2.51.  Thus, the Court agrees with the ALJ that Plaintiff's somewhat hyperbolic statements undermine her credibility.

11

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

### 2. Substantial Evidence in the Record Supports the ALJ's Finding Regarding Plaintiff's Severe Impairments

Under Step 2 of the disability analysis, the ALJ was required to determine whether Plaintiff had "a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520. Section 1509's duration requirement provides that an impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509. The regulations provide that an "impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, *not only by [the claimant's] statement of symptoms*." 20 C.F.R. § 404.1508 (emphasis added).

The regulations further provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). Examples of basic work activities include: "(1)… walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out, and remembering simple instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting." 20 C.F.R. § 404.1521(b).

In this case, the ALJ found that Plaintiff suffered from the following "severe" impairments: "a history of right carpal tunnel syndrome, mild cervical degenerative disc disease without clinical radiculopathy, diarrhea, alcohol abuse, and depression…." Tr. 23. However, the ALJ found that the following impairments were not supported by sufficient evidence: "lower back disease, cognitive dysfunction, fibromyalgia, visual problems/glaucoma, sore throat, headaches, sleep disorder, and malaise...." *Id.*

Plaintiff does not appear to dispute the ALJ's findings regarding the impairments that qualified as severe under the regulations. Accordingly, the Court considers whether the ALJ erred with respect to his findings regarding which impairments *did not* qualify as severe. The Court will address the ALJ's findings with respect to Plaintiff's: (1) lower back disease; (2) visual

12

problem/glaucoma; (3) cognitive dysfunction; and (4) fibromyalgia.  The Court will then address the ALJ's findings with respect to Plaintiff's sleep disorder, malaise, sore throat, and headaches. Finally, the Court will consider Plaintiff's argument that neuropathy, "chronic pain," "duress," and "ovarian tumors (suspect cancer)" (none of which were explicitly addressed in the ALJ's decision) should have been included as severe impairments.  *See* Compl. at 20.  For the reasons set forth above, the Court finds that the ALJ's determinations regarding what conditions of Plaintiff did not qualify as a severe impairment were supported by "[s]ubstantial evidence."  *Vertigan*, 260 F.3d at 1049.

### a.    Lower Back Disease

With respect to Plaintiff's lower back disease, as recognized by the ALJ, the medical evidence only supported a finding of "slight" or "age-appropriate" spinal abnormalities.  Tr. 23; *see also id.* at 24-26 (discussing medical evidence); *see also* Tr. 474.  For example, a May 2004 spinal examination conducted by Dr. Maria Matsumoto found that Plaintiff had "slight age appropriate changes" to her spine and that three discs showed "slight" bulges.  Tr. 483-84.  Similarly, Dr. Lieberson stated in his May 2004 report that MRIs of Plaintiff's neck and lower back were essentially unremarkable for Plaintiff's age, though he did notice mild cervical degenerative disc disease.  Tr. 474.  Furthermore, in November 2007, Dr. Lakshmi Madireddi "diagnosed[] only[] [a] '*reported* history of lumbar [lower back] strain….'"  Tr. 25 (quoting *id.* at 876).  Thus, the ALJ's finding that Plaintiff's lower back disease was not a "severe" impairment was supported by substantial evidence.  20 C.F.R. § 404.1521(a).

### b.    Visual Problems/Glaucoma

The ALJ's finding that Plaintiff's glaucoma was not a severe impairment was also supported by substantial evidence.  As stated by the ALJ, Plaintiff's medical records indicated that in February of 2004, Plaintiff had a best corrected visual acuity of 20/20, and no diagnosis of glaucoma was mentioned.  Tr. 460.  Subsequently, in March of 2007, Dr. Khoa Nguyen found that Plaintiff's best possible corrected vision to be 20/30+3 and diagnosed dry eye syndrome and myopia.  *Id.* 865.  Dr. Nguyen also listed "glaucoma" under diagnosis, but qualified this diagnosis with the term "suspect."  *Id.* ("glaucoma suspect with enlarged optic nerve [illegible]").

13

Furthermore, Dr. Nguyen found that Plaintiff's nerve, macula, vessels, and periphery were all "normal" and also stated that there was no neovascular disease. *Id.* Moreover, at the June 19, 2008 hearing on this matter, the medical expert, Dr. David West, testified that notwithstanding the apparent diagnosis of glaucoma, the medical evidence confirmed that Plaintiff's "pressures… were okay," and Plaintiff's myopia could be corrected to "20/30 plus 3." *Id.* 1130. Thus, substantial evidence supports the ALJ's finding that Plaintiff's visual problems and alleged glaucoma did not constitute a severe impairment.

### c. Cognitive Dysfunction

The ALJ's finding that Plaintiff's low IQ score was not an impairment was supported by substantial evidence. As an initial matter, the Court observes that a number of courts have held that an ALJ may disregard an IQ score where the evidence suggests the claimant "failed to make a serious effort in her testing" and other facts, such as valid, higher IQ scores, contradict the low-IQ score. *Clay v. Barnhart*, 417 F.3d 922, 930 (8th Cir. 2005); *Soto v. Sec'y*, 795 F.2d 219, 222 (1st Cir. 1986) ("[T]the Secretary does not have to accept IQ scores as conclusive if there is substantial evidence… from which to infer their unreliability" (interpreting 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00B4 (1985))); *Burchfield v. Astrue*, No. CV 11–00590–PHX–FJM, 2011 WL 5975764, at *4 (D.Ariz. Nov.30, 2011) ("Evidence that a claimant did not make a serious effort in testing may… be considered when determining the validity of an IQ score").[5]

Here, in his March 2007 report, Dr. El-Sokkary stated that Plaintiff had an IQ of 58, which is in the "[e]xtremely [l]ow range." *Id.* 868. However, notwithstanding Dr. El-Sokkary's finding that Plaintiff had an extremely low IQ, the only "diagnosis" Dr. El-Sokkary made was "malingering." *Id.* Moreover, Dr. El-Sokkary stated that Plaintiff "did not put forth her best effort and appeared to portray herself in an unfavorable light and therefore her true abilities were not observed and she [would] need to be retested." *Id.* at 868. Furthermore, the Court notes that another IQ test, administered by Dr. Sanchez in October 2004, found that Plaintiff had an IQ of 86,

---

[5] The Ninth Circuit has also stated that "an ALJ can decide that an IQ score is invalid." *Thresher v. Astrue*, 283 F. App'x 473, 475 (9th Cir. 2008). However, the Ninth Circuit has declined to "decide[] what information is appropriately looked to in deciding validity." *Id.* at 475 n.6.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

almost 30 points higher than the results reported by Dr. El-Sokkary. *Id.* 643 (finding low-average IQ).

The ALJ found that the fact that Plaintiff, who was formerly employed as an accountant supervisor, "had only 'malingering' for a diagnosis" "fatally undermined" Plaintiff's low IQ score. *Id.* at 23. In light of Dr. El-Sokkary's diagnosis of malingering and statement that Plaintiff "did not put forth her best effort" (*id.* 869), and Plaintiff's previous higher IQ score, the Court finds that the ALJ's decision not to include low IQ as an impairment was supported by substantial evidence. *See Clay*, 417 F.3d at 930.

### d.    Fibromyalgia

The ALJ also declined to include fibromyalgia as a severe impairment. Plaintiff appears to dispute this finding. *See e.g.* Compl. at 20; Emergency Motion at 21.

Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). "Common symptoms... include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease." *Id.* at 89-90. There are no objective or laboratory tests for fibromyalgia. *Id.* Rather, "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Id.* 90. Thus, it is often difficult to diagnose firbromyalgia (and, consequently, it is difficult for ALJ's to assess whether fibromyalgia should be included as an impairment). Nevertheless, "[t]he American College of Rheumatology [has] issued a set of agreed-upon diagnostic criteria" (*id.*), and the Ninth Circuit has recognized the tender point test as one accepted means of diagnosing the disease (*see Rollins v. Massanari*, 261 F.3d 853, 855 (9th Cir. 2001) (stating that the symptom that discriminates between fibromyalgia and other rheumatic diseases is whether Plaintiff flinches when at least 11 of 18 tender points are pressed by the physician's thumb)).

In this case, the ALJ found that "[w]hile fibromyalgia is mentioned several times [in the record], generally in tandem with '-like complaints,' the record does not include durational

15

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   findings documenting multiple pressure or 'tender points'." Tr. 23.  The Court concludes that this

2   finding was supported by substantial evidence.

3          The ALJ's order fails to include a cite to the records he to which he referred.  However,

4   there appear to be three reports in the record concerning fibromyalgia.   Plaintiff identified one

5   report that was contained in the record.  *See* Emergency Report Ex. 2.4 (May 5, 2004 report from

6   Dr. Lieberson); Tr. 474 (same).  The Court's review of the record revealed two additional reports.

7          Significantly, two of the three reports concerning fibromyalgia do not affirmatively

8   diagnose fibromyalgia.  *See* Tr. 474 (stating that Plaintiff made several "very severe complaints" of

9   pain and observing that "[o]ccassionally posttraumatic injuries can result in global soft tissue pain

10   and/or fibromyalgia-*like* complaints," but ultimately concluding that "it is difficult to ascertain a

11   diagnosis" (emphasis added)); *Id.* 902 (noting that *Plaintiff* stated that she had fibromyalgia and

12   including the notation "Fibromyalgia?").

13          The remaining report, a November 2007 report from Dr. Maria Acenas, who was a

14   psychiatrist tasked with evaluating Plaintiff's mental state, lists fibromyalgia as one of several

15   diagnoses.  *Id.* 871.  However, Dr. Acenas' report does not provide any facts or findings in support

16   of her conclusory statement that Plaintiff has fibromyalgia.  *See id.*; 20 C.F.R. § 404.1513

17   ("Medical reports should include… [c]linical findings (such as the results of physical or mental

18   status examinations)"); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need

19   not accept an opinion of a physician—even a treating physician—if it is conclusory and brief

20   and is unsupported by clinical findings").  For example, as recognized by the ALJ, Dr. Acenas does

21   not purport to have tested Plaintiff for tender points.  *See Rollins v. Massanari*, 261 F.3d 853, 855,

22   863 (9th Cir. 2001) (recognizing the tender point test).[6]   Moreover, as recognized by the ALJ, Dr.

23   Acenas did not provide any durational findings regarding Plaintiff's fibromyalgia.  *See* 20 C.F.R. §

24   404.1509.  Her report also does not indicate that Plaintiff's purported fibromyalgia (by itself or in

---

25

26   [6] Indeed, it is questionable whether Dr. Acenas, a psychiatrist, would have performed any analysis
to determine whether Plaintiff had fibromyalgia given that Dr. Acenas was assigned to evaluate
Plaintiff's mental state.  Tr. 870.  Notably, the contemporaneous physical examination performed

27   by Dr. Madireddi considered Plaintiff's complaints of "axial and body pain" but did not result in a
diagnosis of fibromyalgia.  *Id.* at 876.

28

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

1  combination with Plaintiff's other ailments) would have "significantly limit[ed] [Plaintiff's]

2  physical or mental ability to do basic work activities."  20 C.F.R. § 404.1521(a); *Cf* Tr. 1131

3  (medical expert noting, without specifically identifying the doctor, that, while "at one point

4  somebody said [Plaintiff] might have fibromyalgia," that finding was not "well documented at

5  all").[7]

6      Furthermore, the Court notes that, to the extent the reports of fibromyalgia contained in the

7  record are based on Plaintiff's subjective complaints of pain, the ALJ was entitled to discount these

8  reports in light of his finding that Plaintiff's subjective complaints were not credible.  *See*

9  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("An ALJ may reject a treating

10  physician's opinion if it is based 'to a large extent' on a claimant's self-reports that have been

11  properly discounted as incredible.").

12      In light of the record before the ALJ, the Court finds that the ALJ's decision not to include

13  fibromyalgia as a severe impairment was supported by substantial evidence.[8]

14              **e.      Sleep Disorder, Malaise, Sore Throat, and Headaches**

15      The ALJ's findings regarding Plaintiff's remaining purported impairments -- sleep disorder,

16  malaise, sore throat, and headaches -- were also supported by substantial evidence.  With respect to

17  Plaintiff's purported sleep disorder, the ALJ found that "[t]here [were] no positive EEG or sleep

18  ─────────────

19  [7] Plaintiff directs the Court's attention to additional evidence of fibromyalgia which post-dates the ALJ's determination and is not included in the administrative record.  *See* Emergency Motion Exs. 2.0, 2.2, and 2.3.  The Court will address Plaintiff's new evidence *infra* in Section III(B).

20  [8] The Court notes that, while the ALJ properly declined to include fibromyalgia as a severe impairment, the ALJ's reason for rejecting this impairment consisted of a single sentence: "[w]hile fibromyalgia is mentioned several times [in the record], generally in tandem with '-like complaints,' the record does not include durational findings documenting multiple pressure or 'tender points'."  Tr. 23.  Moreover, the ALJ did not explicitly cite to any of the relevant reports concerning fibromyalgia.  Generally, an ALJ must set forth specific reasons for crediting or rejecting a treating or examining physician's report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.").  Here, the Court believes that, while the ALJ's statement concerning fibromyalgia was extremely summary, it adequately captured the deficiencies with the relevant reports.  Nevertheless, as will be set forth *infra*, the Court has determined that this case must be remanded on other grounds.  On remand, the ALJ should consider supplementing his findings concerning fibromyalgia.

17

study findings which would document that claimant has a severe clinical sleep disorder." Tr. 23. Plaintiff has not directed the Court to any medical evidence supporting Plaintiff's sleep disorder claim. Accordingly, the Court cannot conclude that the ALJ erred in finding that Plaintiff's sleep disorder claim was not supported by the medical evidence. Similarly, with respect to Plaintiff's headaches, as recognized by the ALJ, Plaintiff has not identified any evidence showing that Plaintiff "takes… special medication and[/or] receives… special medical treatment for her reported headaches…." *Id*. 23. Furthermore, Plaintiff has failed to identify evidence showing that her malaise, sore throat, and headaches alone or in combination with her other impairments "significantly limit [her]… ability to do basic work activities." 20 C.F.R. § 404.1521(a).

### f. Neuropathy, Chronic Pain, Duress, and Ovarian Cancer

In Plaintiff's various motions, Plaintiff appears to argue that: (1) neuropathy; (2) "chronic pain"; (3) "duress"; and (4) "ovarian tumors (suspect cancer)" should have been included as impairments. *See e.g* Compl. at 20; Emergency Motion at 21. These conditions were not explicitly included in the ALJ's list of severe and non-severe impairments. Tr. 23. However, these conditions may not have been discussed explicitly because Plaintiff never raised neuropathy and chronic pain as distinct conditions in her application for benefits or during her hearing, and never raised duress and ovarian tumors at all. Plaintiff has not directed the Court to any evidence showing when or in what context she raised these conditions. In any event, the Court is not persuaded that the ALJ erred to the extent he failed to include these conditions as severe impairments.

With respect to neuropathy, Plaintiff fails to clearly direct the Court's attention to any evidence that is in the record diagnosing Plaintiff with a nerve condition that was separate and distinct from Plaintiff's carpal tunnel syndrome and mild cervical degenerative disease.[9] *See e.g.*

_____

[9] Not only are Plaintiff's references unclear, several of the reports Plaintiff cites appear to post-date the ALJ's findings and do not appear to be included in the record. *See e.g.* Compl. at 20 ("03/03/10  Dr. Taher, Heather  Chronic Pain"). The Court also notes that Plaintiff has attached to her Emergency Motion several exhibits under the tab "Neuro." Those exhibits that contain documents that predate the ALJ's decision appear to refer to the same nerve issues that led the ALJ to find that Plaintiff had carpal tunnel syndrome and mild cervical degenerative disease and do not diagnose a separate neuropathic disease. *See e.g.* Emergency Motion, Ex. 2.13 (Dr. Matsumoto's

18

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   Compl. at 20 ("**NUEROPATHY** 07/02/02 VMC (ER) Bone Spur  Dr. Lieberson(Nuero Specialist)

2   Chronic Pain"); *See Forsberg v. Pac. N.W. Bell Tel. Co.,* 840 F.2d 1409, 1417–18 (9th Cir. 1988)

3   ("The district judge is not required to comb the record to find some reason to deny a motion for

4   summary judgment.").  The Court notes from its review of the record that one doctor used the

5   phrase "right median neuropathy," but he did so in referring to Plaintiff's carpal tunnel syndrome.

6   Tr. 542 (report from Dr. John Hotson finding that Plaintiff had "right median neuropathy at the

7   wrist").  Moreover, the ALJ explicitly considered Dr. Hotson's report and finding of "right median

8   neuropathy" in finding that Plaintiff had carpal tunnel syndrome.  *Id.* 23-24.

9          Similarly, with respect to chronic pain, Plaintiff fails to clearly direct the Court to Plaintiff's

10  evidence concerning this condition.  *See e.g.* Compl. at 20 (referencing "12/16/02 Dr. Kuang

11  Carpal Tunnel, Dr. Tabrizi, Spasm Upper").  To the extent the Court was able to determine to

12  which records Plaintiff was referring, they appear to be the same records that the ALJ considered in

13  finding Plaintiff had carpal tunnel syndrome and mild degenerative disc disease.  *See e.g.* Compl.

14  at 20 (citing "05/05/04 Dr. Lieberson Neuro/Specialist Chronic Pain"); Tr. 730 (May 5, 2004 report

15  from Dr. Leiberson); *id.* 24 (discussing May 5, 2004 report from Dr. Lieberson).  None of the

16  records appear to diagnose "chronic pain" as a distinct impairment.  Instead, they refer to

17  Plaintiff's subjective complaints of pain.  *See e.g. id.* 730 (noting Plaintiff's complaints of pain).[10]

18  Consequently, the Court finds that these records fail to show that Plaintiff had a distinct pain

19  condition which should have been included in the ALJ's list of severe impairments.

20          While not identified by Plaintiff, the Court notes that Dr. Sanchez's October 2004 report

21

22  May 5, 2004 report); Tr. 483-84 (same).  Indeed, the ALJ explicitly references some of these
    documents in reaching his conclusions.  *See id.* 24 (discussing Matsumoto report).  With respect to
23  those records attached to Plaintiff's Emergency Motion that post-date the ALJ's decision and do
    not appear in the record, the Court will address these documents *infra* in the section of the order
24  pertaining to Plaintiff's new evidence.
    [10] The Court has also reviewed those records attached to Plaintiff's Emergency Motion under the
25  Cervical/Chronic Pain tab.  *See* Emergency Motion, Ex. 2.62 *et seq.*  To the extent these exhibits
    contain documents which are in the record (*see e.g. id.*, Ex. 2.68 (May 5, 2004 report from Dr.
26  Lieberson)), the Court finds that they fail to support Plaintiff's argument that chronic pain should
    have been listed as an impairment for the reasons state above.  To the extent the exhibits seek to
27  introduce new evidence, the Court will address them *infra* in Section III(B).

28                                                        19

diagnoses "[p]ain [d]isorder with both [p]sychological [f]actors and a [g]eneral [m]edical [c]ondition." Tr. 367.   The ALJ acknowledged Dr. Sanchez's report and his diagnosis regarding Plaintiff's pain disorder in making his determination as to which impairments were severe, but did not include "pain disorder" in his list of impairments.  *Id.* 24.  This issue does not warrant reversal.

As an initial matter, the Ninth Circuit has held that failure to list an impairment at step two is harmless where the step is nevertheless "resolved in [the Plaintiff's] favor" due to the presence of other severe impairments.  *Burch*, 400 F.3d at 682.   Here, step two was resolved in Plaintiff's favor as the ALJ determined Plaintiff had severe impairments including carpal tunnel, mild cervical disease, etc… Tr. 23.  Moreover, Dr. Sanchez's "pain disorder" diagnosis appears to have been based on Plaintiff's complaints of shoulder, neck, back, and hand pain, as well as Plaintiff's statements regarding her depression.  *Id.* 366.  To the extent that the ALJ fully considered Plaintiff's psychological impairments and subjective complaints in making his RFC determination and in reaching his ultimate conclusion that Plaintiff was able to perform sedentary work, the ALJ's failure to list "pain disorder" as a severe impairment did not prejudice Plaintiff.  *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (failure to include "bursitis," a condition which causes pain, "at step 2… was harmless" where ALJ discussed plaintiff's bursitis in making his RFC determination).[11]

With respect to duress, Plaintiff fails to direct the Court to any medical evidence showing that Plaintiff had a "duress" impairment.  *See e.g.* Emergency Motion, Ex. 1.99 (providing SSA-3441 form completed by Plaintiff stating that Plaintiff "can't deal with pressure").

Finally, as to Plaintiff's claim that she has "ovarian tumors (suspect cancer)" (Compl. at 20), Plaintiff fails to direct the Court to any evidence that Plaintiff had ovarian cancer.  Indeed, Plaintiff's evidence (which the Court notes is not part of the record) shows only that, in March 2009 (after the ALJ's decision), Plaintiff was diagnosed with a "3.6 cm right ovarian cyst."  *See*

---

[11] While the Court finds it was harmless error not to specifically list "pain disorder" in the listing of impairments, as set forth *infra* in Section III(B)(4)(d), the Court finds below that the ALJ erred to the extent he failed to consider two statements from Dr. Sanchez's report regarding the effects of Plaintiff's pain on Plaintiff's capacity for work.

20

United States District Court
For the Northern District of California

Emergency Motion, Ex. 2.60.  This cyst was expected to clear on its own within "1-3 days" (*id.*) and thus would be unlikely to significantly impact Plaintiff's ability to work for a period of 12 months as is required to constitute a severe impairment.  Thus, the Court is not persuaded that neuropathy, chronic pain, duress, or ovarian cancer should have been included as severe impairments.

For the reasons set forth above, the Court concludes that the ALJ's determination as to which impairments should be included as severe impairments was supported by substantial evidence.

### 3. Substantial Evidence in the Record Supports the ALJ's Finding that None of Plaintiff's Impairments Meet the Listing of Impairments

Under the regulations governing disability benefits, if a claimant has an impairment that meets the requirements of an impairment set forth in 20 C.F.R. § 404, Subpart P, App. 1 ("Listing of Impairments") or, alternatively, "equals" such an impairment.  20 C.F.R. § 404.1520(d).  In this case, the ALJ considered whether Plaintiff's diarrhea, glaucoma, or mental impairments might qualify under the Listing of Impairments and concluded they did not.  The Court finds that the ALJ's determinations were supported by substantial evidence.

#### a. Diarrhea

The ALJ considered whether Plaintiff's diarrhea met or equaled an impairment under the Listing of Impairments.  Plaintiff claimed at the hearing that she was suffering from diarrhea 24 hours per day.  *See* Tr. 1126.  Dr. West, the medical expert, testified that if Plaintiff was actually suffering from diarrhea 24 hours a day, Plaintiff would have an impairment which qualified under the Listing of Impairments.  *See id.* 1128.  However, Dr. West testified that whether Plaintiff's diarrhea was in fact as severe as Plaintiff claimed was not "apparent… [from a] review of the chart."  *Id.* 1130.  Moreover, the ALJ found that "the record include[d] only several instances in which diarrhea [was] discussed at all" and the record did not indicate that it was 24 hours a day.  *Id.* 25.  Indeed, the only medical evidence in the record relating to Plaintiff's diarrhea is a report from Dr. Harvey Rockman stating that he performed a colonoscopy and an endoscopy on Plaintiff

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

and that he found a small hiatal hernia and mild gastritis. *See id.* 949.[12]  This report does not

indicate Plaintiff would have been suffering from diarrhea with the degree of severity alleged by

Plaintiff.  Furthermore, as set forth above, the ALJ properly discounted Plaintiff's own testimony

regarding the severity of her symptoms.  Accordingly, the Court finds that the ALJ's conclusion

that Plaintiff's diarrhea was not severe enough to qualify under the Listing of Impairments was

supported by substantial evidence.

### b.      Glaucoma

The ALJ next considered Plaintiff's visual problems/glaucoma and found that they did not

qualify under the Listing of Impairments. *Id.* 26.  The medical expert testified that, in light of the

facts that Plaintiff's "pressures… were okay" and Plaintiff's corrected vision was "20/30 plus 3,"

Plaintiff would not "meet the… visual listings." *Id.* 1130; *see also* Listing of Impairments §

1021.02 (setting forth the requirements for "Loss of visual acuity" as an impairment).

Accordingly, the ALJ's finding was supported by substantial evidence.

### c.      Psychological Impairments

Finally, the ALJ considered Plaintiff's purported psychological impairments (*e.g.*

depression and alcohol abuse).  Specifically, the ALJ considered whether any of Plaintiff's

psychological impairments met the criteria set forth in Listing of Impairments § 12.04 (Affective

Disorders) or § 12.09 (Substance Addiction Disorders).

### i.      Section 12.04

Section 12.04 includes three categories of affective disorders: (1) depressive syndrome; (2)

manic syndrome; and (3) bi-polar disorder.  As recognized by the ALJ, in order for symptoms

falling under these categories to qualify as a limitation under Section 12.04, they must result in at

least two of the following: "1. Marked restriction of activities of daily living;… 2. Marked

difficulties in maintaining social functioning;… 3. Marked difficulties in maintaining

concentration, persistence, or pace; or… 4. Repeated episodes of decompensation, each of

extended duration."  Listing of Impairments § 12.04 ("Paragraph B").  "'[M]arked'… means more

---

[12] Dr. Rockman also took "duodenal biopsies… to rule out nontropical sprue."  Tr. 949.  However, it is not clear from the record what the results were.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

than moderate but less than extreme." *Id.* § 12.00(C).[13]

Alternatively, under Paragraph C of Section 12.04, a claimant's mental impairment may

qualify under Section 12.04 if the claimant has a:

> [m]edically documented history of a chronic organic mental disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following: 1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Listing of Impairments § 12.04 ("Paragraph C").

While the Court will not review all the evidence concerning Plaintiff's mental impairments

here (this review will be reserved for Section III(A)(4)(d)), the Court observes that there was

substantial evidence in the record supporting the conclusion that Plaintiff did not suffer from a

"[m]arked" restriction of activities of daily living, or marked difficulties in maintaining social

functioning, concentration, persistence, or pace. *See* Tr. 655 (report of Dr. Murray Krelstein

finding that Plaintiff had "mild" restrictions of activities of daily living, "mild" difficulty in

maintaining social functioning, and "mild" difficulty in maintaining concentration, persistence, or

pace and had had no episodes of decompensation of extended duration); *id.* 724 (report from Dr.

Ute Kollath acknowledging that Plaintiff suffered from depression and alcohol abuse, but stating

Plaintiff "report[ed] being able to adequately handle some responsibilities of daily living including

hygiene, grooming, and household chores" and affirmatively concluding that Plaintiff was "able to

keep appointments"); *id.* 725 (finding that Plaintiff was capable of conforming to a work schedule,

carrying out simple instructions, performing repetitive tasks, and responding appropriately to

emergencies); *see id.* 869 (report from Dr. El-Sokkary finding that Plaintiff "was able to maintain a

---

[13] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." *Id.* § 12.00(C)(4).

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

1    sufficient level of concentration, persistence, and pace to do basic work").[14]

2          Moreover, the substantial evidence supported the conclusion that Plaintiff had not suffered

3    repeated episodes of decompensation.  Indeed, Dr. Krelstein reported in October 2004 that Plaintiff

4    had suffered no such episodes.  *Id.* 655.  The Court notes that, in November 2004, after Dr.

5    Krelstein's report, Plaintiff was brought to the hospital because, according to Plaintiff's sister,

6    Plaintiff had taken pills in an effort to take Plaintiff's own life.  Tr. 24; *id.* 281; *id.* 667 (stating that

7    Plaintiff was admitted after Plaintiff took 4 Motrin and 1 Vicodin for severe back pain and told her

8    sister she wanted to die).  However, this single incident does not undermine the ALJ's finding that

9    Plaintiff had suffered no repeated episodes of decompensation of extended duration.  As an initial

10   matter, even assuming this incident may be considered an episode of decompensation, it was not

11   "of extended duration" as the records indicate Plaintiff was released fairly shortly after the intake.

12   *See id.* 667 (recommending Plaintiff for further monitoring by out-patient mental health); Listing of

13   Impairments § 12.00(C)(4) (stating that an episode of extended duration usually lasts 2 weeks).

14   Moreover, Plaintiff has failed to present evidence that there were other such incidents, much less

15   that there were "three episodes within 1 year."  Listing of Impairments § 12.00(C)(4) ("[R]epeated

16   episodes of decompensation, each of extended duration… means three episodes within 1 year, or

17   an average of once every 4 months, each lasting for at least 2 weeks").  Indeed, while Plaintiff

18   claims to have been placed on involuntary psychiatric hold several times, Plaintiff did not provide,

19   and the ALJ was not able to obtain, any documentation supporting these claims.  *See* Tr. 25.  In

20   light of the dearth of evidence showing Plaintiff suffered from a marked restriction of activities of

21   daily living, marked difficulties in maintaining social functioning, concentration, persistence, or

22   pace, or repeated episodes of decompensation, the Court finds that the ALJ did not err in

_____

[14] The Court notes that there was a December 2004 report from Dr. Hyunh finding that Plaintiff
suffered "major depression" based, in part, on Dr. Hyunh's observation that Plaintiff had "poor…
concentration."  *Id.* 720.  As will be discussed *infra*, the ALJ erred in failing to consider this report
in assessing Plaintiff's RFC.  Nevertheless, the Court does not believe that Dr. Hyunh's statement
that Plaintiff had "poor… concentration" is sufficient to establish a "marked" reduction in
concentration as would be required to establish the third of the four factors identified in Section
12.04.  *See* Listing of Impairments § 12.04 (discussing "[m]arked difficulties in maintaining
concentration, persistence, or pace").  Moreover, even if it were, Section 12.04 requires that two of
its four factors are met and the substantial evidence shows that the other three factors were not met.

24

**United States District Court**
For the Northern District of California

1    concluding that the requirements of Paragraph B of Section 12.04 were not met.

2            The ALJ also found that the requirements of Paragraph C of Section 12.04 were not

3    satisfied.  *Id.* 26.  This finding was supported by substantial evidence.  There were not repeated

4    episodes of decompensation of extended duration.  Plaintiff also has not identified evidence

5    showing that she has: (1) "[a] residual disease process that has resulted in such marginal

6    adjustment that even a minimal increase in mental demands or change in the environment would be

7    predicted to cause the individual to decompensate," or (2) a "[c]urrent history of 1 or more years'

8    inability to function outside a highly supportive living arrangement, with an indication of continued

9    need for such an arrangement."  *See* Paragraph C.

10           Thus, the Court concludes that the ALJ's determination that the requirements of Section

11   12.04 were not met was supported by substantial evidence.

### ii.     Section 12.09

13           As set forth above, the ALJ also considered whether Plaintiff's symptoms met the

14   requirements of Section 12.09.  Section 12.09 pertains to "[b]ehavioral changes or physical

15   changes associated with the regular use of substances that affect the central nervous system."

16   Listing of Impairments § 12.09.  It provides that "[t]he required level of severity for these disorders

17   is met when the requirements in any of the following [subsections] (A through I) are satisfied."  *Id.*

18   Subsections A through I of Section 12.09 refer to: "A. Organic mental disorders. Evaluate under

19   12.02," "B. Depressive syndrome. Evaluate under 12.04," "C. Anxiety disorders. Evaluate under

20   12.06," "D. Personality disorders. Evaluate under 12.08," etc…  Based on the evidence of

21   depression in the record, it appears that Subsection B ("depressive syndrome") is relevant here.

22   Subsection B states that the severity of the depressive syndrome must be "[e]valuate[d] under

23   [Section] 12.04."  *Id.*  The Court has concluded above that the requirements of Section 12.04 were

24   not met.  Accordingly, the requirements of Subsection B of Section 12.09 were not met either.

25   Plaintiff has not argued or directed the Court's attention to evidence showing that the requirements

26   of one of the other subsections of Section 12.09 (*e.g.* Subsections A or C through I) were satisfied.

27   Thus, the Court finds that substantial evidence supported the ALJ's determination that Plaintiff's

28

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

impairments do not meet or equal the requirements of Section 12.09.

### d. Fibromyalgia

In one of Plaintiff's motions, Plaintiff appears to contend that her purported fibromyalgia meets the requirements of a listed impairment. *See* ECF No. 21 at 20. This argument fails because, as set forth above, Plaintiff has not adduced sufficient evidence of fibromyalgia. Moreover, "fibromyalgia is not a listed impairment." *Martin v. Astrue*, 2:11-CV-0891 GGH, 2012 WL 3728145, at *2 (E.D. Cal. Aug. 24, 2012).[15]

For the reasons set forth above, the Court concludes that the ALJ's finding that Plaintiff's impairments did not meet or equal the requirements of any condition in the Listing of Impairments was supported by substantial evidence.

### 4. The ALJ's Finding that Plaintiff's RFC Allowed Plaintiff to Perform Sedentary Work Is Not Supported by Substantial Evidence

The Court next addresses the ALJ's finding that Plaintiff's RFC would allow Plaintiff to perform sedentary work. "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

Here, with respect to Plaintiff's RFC and ability to perform sedentary work, the ALJ found that: (1) "[s]econdary to [Plaintiff's] largely untreated depression… [Plaintiff had] an ability to interact appropriately with others such as supervisors, co-workers, and the general public"; (2) Plaintiff was "not significantly limited in her memory or in concentration"; (3) "would be capable of conforming to a typical work schedule"; (4) could "understand, remember, and carry out at least simple repetitive tasks"; and (5) could "respond appropriately to changes in a routine work setting,

---

[15] To the extent Plaintiff contends that any of Plaintiff's other impairments might qualify under the Listing of Impairments, this argument fails because Plaintiff has not clearly identified which impairment in the Listing of Impairments Plaintiff contends Plaintiff's maladies meet or equal, nor has Plaintiff clearly stated why Plaintiff's maladies meet or equal a listed impairment. *See Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (affirming ALJ's determination where plaintiff "offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment").

26

United States District Court
For the Northern District of California

such as to emergencies…."  The ALJ also found that Plaintiff "would have no significant limitations in her ability to stand, walk,… sit,… bend[], stoop[],… crouch[]," or use her left arm, and that Plaintiff had "no visual… limitations." Tr. 26.  The ALJ found that Plaintiff's only physical limitation was that "she can lift or carry 10 lbs. only occasionally with the right" hand.  *Id.*  The ALJ concluded that, taking into account this limitation, Plaintiff would be capable of performing sedentary jobs including parking attendant, cashier, and assembler,[16] and that such jobs existed in the national economy.  *Id.* 31.

        As will be discussed below, the Court finds that, in determining Plaintiff's RFC and capacity for sedentary work, the ALJ also adequately considered the evidence concerning Plaintiff's carpal tunnel syndrome, mild cervical degenerative disc disease, and non-severe impairments as well as lay witness testimony from Plaintiff's sister and daughter.  However, the ALJ erred to the extent he failed to consider any limitations arising from Plaintiff's diarrhea.  The ALJ also erred to the extent he failed to explicitly address reports from Dr. Sanchez and Dr. Hyunh concerning Plaintiff's mental capacity for sedentary work.  Finally, the Court finds that the ALJ erred to the extent he found that Plaintiff's right wrist limitations would still permit her to work as a cashier or assembler.  The Court addresses each of these issues in turn.

        a.    **Carpal Tunnel Syndrome and Mild Cervical Degenerative Disc Disease**

        As an initial matter the Court finds that, in determining Plaintiff's RFC, the ALJ fully considered the evidence concerning Plaintiff's carpal tunnel syndrome and mild cervical degenerative disc disease.  As set forth above, the ALJ found, that Plaintiff "would have no significant limitations in her ability to stand, walk,… sit,… bend[], stoop[],… crouch[]," or use her left arm, and that Plaintiff had "[no] visual… limitations." *Id.* 26.  The ALJ found that Plaintiff's only physical limitation was that "she can lift or carry 10 lbs. only occasionally with the right." *Id.*  This conclusion appears to have been supported by the ALJ's consideration of the evidence concerning Plaintiff's carpal tunnel syndrome and mild cervical degenerative disc disease

---

[16] Notably, the ALJ referred to parking lot attendant and cashier/clerk as one job.  *See* Tr. 31 (referring to "parking clerk/cashier").  Given that the vocational expert testified that these were separate jobs (*see id.* 1134), the Court assumes the ALJ's statement was a typographical mistake.

27

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    As noted by the ALJ, a February 2004 report from Dr. Lara A. Salamacha, found that,

2    notwithstanding Plaintiff's carpal tunnel and mild cervical degenerative disc disease, Plaintiff had

3    no restrictions in her ability to stand, walk, or sit. Tr. 27 (citing *id.* 461). Furthermore, Plaintiff

4    had full use of her left arm and could lift 10 pounds occasionally with her right arm. *Id.* Similarly,

5    another February 2004 report from Dr. Audrey Kuang found that, while Plaintiff suffered from

6    severe carpal tunnel syndrome in her right hand, her left arm was fine. *Id.* 457. Moreover, Dr.

7    Kuang found that, notwithstanding the carpal tunnel syndrome, Plaintiff could "occasionally" lift

8    10 pounds with her right hand and could "frequently" lift less than 10 pounds with her right hand.

9    *Id.* Dr. Kuang did not find any limitations with respect to Plaintiff's ability to sit, climb, balance,

10   stoop, kneel, crouch, crawl, see, hear, or speak. *Id.* at 458.

11   Furthermore, as noted by the ALJ, a later medical report from Dr. Madireddi suggested

12   "overall improvement in [Plaintiff's] condition." *Id.* 27. In her November 2007 report, Dr.

13   Madireddi stated, with respect to Plaintiff's cervical spine, that: (1) Plaintiff's spine exhibited a

14   normal cervical curve; (2) Plaintiff had a full range of motion, with no tenderness or stiffness

15   noted; and (3) Plaintiff's motions appeared to be painless. *Id.* 876. Dr. Madireddi stated that

16   Plaintiff's lumbar (lower) spine had "50% of normal" flexion and extension. *Id.* However, she

17   noted that Plaintiff's range of motion in her lower spine "was self limited by" Plaintiff. *Id.*

18   Furthermore, Dr. Madireddi found that Plaintiff had no limitations with respect to climbing,

19   stooping, kneeling, crouching, or crawling. *Id.* 881. Moreover, Dr. Madireddi found that Plaintiff

20   could "continuously" reach, handle, finger, feel, push, and pull with *both* her right and her left

21   hand. *Id.* 880. Ultimately, the ALJ noted that Dr. Madireddi's findings suggested overall

22   improvement in Plaintiff's condition, particularly with respect to Plaintiff's right hand, but the ALJ

23   choose to endorse Dr. Kuang and Dr. Salamacha's opinions because they were more "consistent

24   with… the longitudinal record." *Id.* 27. Thus, the evidence concerning Plaintiff's carpal tunnel

25   and mild cervical degenerative disc disease supports the ALJ's determination that Plaintiff's only

26   physical limitation was that Plaintiff would not be able to lift or carry "10 lbs. [more than]

27   occasionally." *Id.*

28

28

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

1    In making his determination, the ALJ considered but rejected a May 5, 2004 report from

2 Dr. Lieberson, who was Plaintiff's treating physician, in which Dr. Lieberson stated that Plaintiff

3 was "disabled" based on her back pain. *Id.* 27; 730. As noted by the ALJ, Dr. Lieberson's finding

4 of disability was "based upon [Plaintiff's] stated subjective[]" complaints. *Id.* 730. The ALJ

5 properly found that Plaintiff's subjective complaints regarding the severity of her condition were

6 not credible. Moreover, Dr. Lieberson indicated that the objective tests did not support Plaintiff's

7 reports of back pain. *Id.* According to Dr. Lieberson, Plaintiff's examination was "not particularly

8 striking." *Id.* Dr. Leiberson stated that "MRIs of [Plaintiff's] neck and low back [were] essentially

9 unremarkable for [Plaintiff's] age." *Id.* Only "Mild midcervical degenerative disease [was] seen."

10 *Id.* Dr. Lieberson also noted "a minimal L5-S1 bulge," but observed that "[t]here [was] no

11 evidence of central canal stenosis or nerve root compression in the neck or in the low back." *Id.* In

12 light of these equivocal results, the ALJ properly rejected Dr. Lieberson's report.

13    Thus, the Court finds that the ALJ fully considered the effects of Plaintiff's carpal tunnel

14 syndrome and mild cervical degenerative disc disease in determining Plaintiff's RFC and capacity

15 for sedentary work.

16    **b.    The ALJ Considered Evidence Concerning Plaintiff's Non-Severe Conditions and the Lay Witness Testimony**

17    In determining Plaintiff's RFC, the ALJ also sufficiently considered the limiting effects of

18 any impairments that were substantiated but not found to be severe during step two. *Burch*, 400

19 F.3d at 683 (holding that, in determining a claimant's RFC, an ALJ must consider "restrictions

20 imposed by all of an individual's impairments, even those that are not 'severe.'" (quoting Social

21 Security Ruling 96-8p (1996))). For example, the ALJ found that the evidence did not support the

22 conclusion that Plaintiff's visual problems would limit Plaintiff's RFC or ability to do sedentary

23 work. *Id.* 29 (noting that "[t]he claimant has received only minimal if any treatment for her eyes or

24 reported visual problems" and that these problems are not severe enough to "prevent [Plaintiff]

25 from driving a motor vehicle"); *id.* 27 (noting that Dr. Kuang's report found that Plaintiff would

26 have "no visual… limitations"). The ALJ also considered Plaintiff's subjective complaints,

27 including Plaintiff's complaints of pain. *Id.* 28, 29-30. As set forth *supra*, the ALJ properly

28

29

concluded that Plaintiff's subjective complaints and statements regarding the limiting effects of her symptoms were not credible.

Additionally, the ALJ adequately considered the testimony of Plaintiff's lay witnesses. Plaintiff provided lay witness testimony from Plaintiff's sister, Valerie Harris (*id.* 202), and Plaintiff's daughter, Rasheeda Noble (*id.* 732). When rejecting lay witness testimony, an ALJ "must give reasons that are germane to each witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012). Here, the ALJ considered Ms. Harris and Ms. Noble's testimony and found that this testimony was not sufficient to "overturn the medical opinions in the record from examining, evaluating, and treating physicians." *Id.* 29. Moreover, the ALJ noted that Ms. Noble admitted that "she was 'not knowledgeable enough about [her] mother's affairs' to complete a more specific medical treatment form." *Id.* (quoting *id.* at 732). The Court finds that the ALJ fulfilled his obligation to provide relevant reasons for rejecting Ms. Harris and Ms. Noble's testimony and that his decision to do so was supported by substantial evidence.

### c.   The ALJ's Failure to Consider the Limiting Effects of Plaintiff's Diarrhea

While the Court believes that the ALJ sufficiently considered the evidence concerning Plaintiff's carpal tunnel syndrome, mild cervical degenerative disc disease, and non-severe conditions, the Court finds that the ALJ erred to the extent he failed to address the effects of Plaintiff's diarrhea on Plaintiff's RFC. In the portion of the ALJ's order discussing Plaintiff's RFC, the ALJ makes only one mention of Plaintiff's diarrhea: "During her most recent hearing, the claimant added that she had diarrhea, '24/7' which made her 'poop all the time.'" *Id.* 28. The ALJ's statement appears in the context of discussing Plaintiff's credibility. Based on the context, the Court infers that the ALJ did not believe Plaintiff's claim that she suffered diarrhea 24 hours per day, seven days a week (a claim which he was certainly entitled to discount in light of the affirmative evidence of malingering).

Nevertheless, in step two, the ALJ found that Plaintiff's diarrhea was a severe impairment. *Id.* 23. This finding implies that, even if the ALJ did not believe Plaintiff was suffering diarrhea 24 hours per day, he did believe she suffered from diarrhea to some degree, and that Plaintiff's

30

United States District Court
For the Northern District of California

diarrhea was severe enough to "significantly limit[] [her]… ability to do basic work activities." *Id.*; *see Carr v. Sullivan*, 772 F. Supp. 522, 527 (E.D. Wash. 1991) (holding that "[a] 'severe' impairment, by definition, significantly limits the claimant's physical or mental ability to do basic work activities" (citing 20 C.F.R. § 401.1521(a)).[17]   Accordingly, the Court cannot simply assume, in the absence of some statement by the ALJ, that Plaintiff's diarrhea had *no* limiting effects.  *See Gonzalez v. Sullivan*, 914 F.2d 1197, 1202 (9th Cir. 1990) (remanding case where "[t]he Secretary did not explain how appellant's incontinence affects his ability to work or whether incontinence constitutes a nonexertional limitation in this case" (internal citations omitted)).  Moreover, to the extent Plaintiff's diarrhea did have limiting effects, the ALJ would need to gather additional evidence from the vocational expert as to how Plaintiff's diarrhea would impact Plaintiff's ability to perform sedentary work.  *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (holding that hypothetical questions asked of the vocational expert must "set out all of the claimant's impairments").[18]  The Court therefore remands this case to the Commissioner so that the ALJ can make findings as to: (1) what, if any limitations, would arise from Plaintiff's diarrhea, and (2) how these limitations would affect Plaintiff's capacity for sedentary work.  *See Gonzalez*, 914 F.2d at 1202.

> **d.     Mental Capacity for Sedentary Work**

The Court also finds that, in determining, Plaintiff's mental capacity, the ALJ gave adequate consideration to the reports of psychologist Dr. Kollath, psychologist Dr. El-Sokkary,

---

[17] Notably, the evidence concerning Plaintiff's diarrhea was weak, consisting of: (1) a report from Dr. Harvey Rockman stating that he performed a colonoscopy and an endoscopy on Plaintiff and that he found only a small hiatal hernia and mild gastritis (*see* Tr. 949), and (2) Plaintiff's testimony at the June 2008 hearing that she had diarrhea 24 hours a day, seven days a week (*see id.* 25).  Indeed, Dr. West, the medical expert testified that whether Plaintiff's diarrhea was in fact as severe as Plaintiff claimed was not "apparent… [from a] review of the chart."  *Id.* 1130.

[18] The Court notes that the ALJ stated that his opinion as to Plaintiff's RFC was formed "[a]fter careful consideration of the entire record" and that his RFC findings were based "upon the totality of medical opinions."  *Id.* 26.  Nevertheless, as set forth above, the ALJ determined that diarrhea was a *severe* impairment, and this determination implies that the ALJ believed that Plaintiff's diarrhea was severe enough to "significantly limit [her]… ability to do basic work activities." (20 C.F.R. § 404.1521(a)).  In light of this determination, the Court will not assume, without some express finding from the ALJ, that Plaintiff's diarrhea had no limiting effects.

31

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

1    psychiatrist Dr. Acenas, and psychologist Dr. Snyder.  However, it appears that the ALJ may have

2    erred to the extent he failed to explicitly discuss the October 2004 report of Dr. Sanchez and the

3    December 2004 report of Dr. Hyunh.  The Court addresses these issues in turn.

4                    **i.     Doctors Kollath, El-Sokkary, Acenas, and Dr. Snyder's**
                              **Reports**

5

6            With respect to Plaintiff's psychological capacity, the ALJ found that: (1) "[s]econdary to

7    [Plaintiff's] largely untreated depression… [Plaintiff had] an ability to interact appropriately with

8    others such as supervisors, co-workers, and the general public"; (2) Plaintiff was "not significantly

9    limited in her memory or in concentration"; (3) "would be capable of conforming to a typical work

10   schedule"; (4) could "understand, remember, and carry out at least simple repetitive tasks"; and (5)

11   could "respond appropriately to changes in a routine work setting, such as to emergencies…."  Tr.

12   26.[19]

13           In making these findings, the ALJ explicitly discussed the opinions of: (1) psychologist Dr.

14   Kollath; (2) psychologist Dr. El-Sokkary; (3) psychiatrist Dr. Acenas; and (4) psychologist Dr.

15   Snyder.  *Id*. 27.  As noted by the ALJ, Plaintiff met with Dr. Kollath in May 2005.  *Id*. 722.  Dr.

16   Kollath assigned Plaintiff a global assessment functioning ("GAF") score of 60 (*see id*. 27, 724),

17   which is categorized as "moderate symptoms" and is one point below "mild symptoms."[20]  With

18   respect to "Daily Living," Dr. Kollath stated that "Plaintiff reports being able to adequately handle

19   some responsibilities of daily living including hygiene, grooming, and household chores."  *Id*. 724.

20   Dr. Kollath also reported that Plaintiff was able to keep appointments and could "remember [and]

21   carry [out] simple instructions [and] perform repetitive tasks."  *Id*. 724-25.  As to social

22   functioning, while Dr. Kollath noted that Plaintiff was "irritable and non-compliant" during their

23   meeting and accordingly, "would have some difficulties interacting with others," Dr. Kollath

24   ────────────────────

     [19] While not directly relevant to Plaintiff's ability to perform sedentary work, the Court notes that
25   the ALJ found that Plaintiff could "manage funds in her own best interests."  Tr.  26.  This finding
     was supported by substantial evidence.  Dr. Kollath's 2005 report noted that Plaintiff had the
26   "capacity, excluding Alcohol Abuse, to manage supplemental funds…."  *Id*. 725.  Subsequent
     reports from Dr. El-Sokkary and Dr. Acenas, neither of whom diagnosed Plaintiff with alcoholism,
27   stated without reservation that Plaintiff would be able to manage her own funds.  *Id*. 869, 872.
     [20] The GAF "is a 100-point scale that measures a patient's overall level of psychological, social,
28   and occupational functioning on a hypothetical continuum."  *See* http://www.gafscore.com/.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

**United States District Court**
For the Northern District of California

qualified this opinion by stating that "records indicate that [Plaintiff] is able to relate in an adequate

manner." *Id.*  Dr. Kollath diagnosed Plaintiff with alcohol abuse and depression (*id.* 724), but,

nevertheless, concluded that Plaintiff would be able "to understand, remember, and carry out

instructions" and "to respond appropriately to supervision, co-workers, and work pressures." *Id.*

726-27.  Dr. Kollath reported that Plaintiff's psychological prognosis was "fair." *Id.* 725.

Later reports regarding Plaintiff's mental condition were even more positive.  In March

2007, Dr. El-Sokkary reported that Plaintiff was "able to care for hygiene, grooming, [and] daily

living activities." *Id.* 867.  As set forth *supra*, Dr. El-Sokkary found that Plaintiff had low IQ, but

stated that Plaintiff "did not put forth her best effort" and ultimately only diagnosed Plaintiff with

malingering. *Id.* 868-69.  Dr. El-Sokkary further remarked that Plaintiff had the "capacity to

understand, remember, and perform simple tasks" and that Plaintiff "was able to maintain a

sufficient level of concentration, persistence, and pace to do basic work…" *Id.* 869.

Similarly, a November 2007 report from Dr. Acenas found that Plaintiff's GAF score was

70 (*id.* 872), which is consistent with "mild" symptoms and is one point below "slight"

symptoms.[21]  Dr. Acenas also found that Plaintiff had no limitations with respect to understanding,

remembering, and carrying out simple instructions, and only "mild" limitations with respect to: (1)

understanding, remembering, and carrying out complex instructions, and (2) making judgments on

simple and complex work-related decisions. *Id.* 872-73.  Moreover, Plaintiff had no limitations

with respect to Plaintiff's ability to appropriately interact with the public, supervisors, and co-

workers, and that Plaintiff could respond to usual work related situations and changes in work

setting. *Id.* 874.  Dr. Acenas concluded that Plaintiff "would be able to perform work activities on

a consistent basis, maintain regular attendance in the workplace[,] and complete a normal

workweek," and that Plaintiff "would be able to deal with the usual stress encountered in

competitive work." *Id.* 872.

The ALJ also considered but rejected a one page form filled out by Dr. Snyder in December

2004 which stated that Plaintiff was disabled due to depression.  Tr. 27-28, 721.  The ALJ's

---

[21] *See* http://www.gafscore.com/.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

decision to reject this finding was supported by substantial evidence.  As noted by the ALJ, Dr.

Snyder stated that Plaintiff's depression began in 2003, but there is no evidence that Dr. Snyder

treated Plaintiff in 2003.  *Id.* 721.  Moreover, Dr. Snyder's report appears to have been filled out

mostly by Plaintiff and does not set forth any basis for her diagnosis of depression.  Furthermore,

Dr. Snyder's finding of disability and her finding that Plaintiff "can't walk, can't lift, cant' think"

due to depression (*id.*) are contradicted by the other reports in the record.  *See infra* Section

III(A)(4)(b).  Thus, the ALJ properly rejected Dr. Snyder's disability finding.

### ii.       Doctors Hyunh and Sanchez's Reports

In his motion for summary judgment, Defendant brought to the Court's attention the fact

that the ALJ, in analyzing Plaintiff's RFC, the ALJ failed to explicitly reject the reports of two

psychiatric care professionals, Dr. Hyunh and Dr. Sanchez.  Mot. at 6 n.3; *id.* at 7 n.4.[22]  These

reports contained statements and opinions which appear to be contrary to the ALJ's conclusions

regarding Plaintiff's mental capacity.  To the extent the ALJ failed to discuss the reports in making

his RFC determination, this may have been error.

An ALJ generally must "set forth specific, legitimate reasons for" crediting or rejecting a

treating or examining physician's report.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005)

("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ

may only reject it by providing specific and legitimate reasons that are supported by substantial

evidence.").  However, an ALJ "need not discuss *all* evidence presented to" him. *Vincent v.

Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Rather, he must explain why "significant

probative evidence has been rejected."  *Id.*  Thus, an ALJ's decision need not be reversed where he

fails to discuss evidence which is "neither significant nor probative."  *Id.*  Moreover, the Ninth

Circuit has held "that harmless error principles apply in the Social Security Act context."  *Molina*

---

[22] The ALJ also did not explicitly address an October 2004 report from Dr. Krelstein. But this
report was consistent with the ALJ's findings concerning Plaintiff's mental capacity. *See id.* 655
(finding that Plaintiff's psychological impairments were not "severe," and concluding that Plaintiff
had only mild limitations with respect to activities of daily living, social functioning, and
maintaining concentration, persistence and pace). Thus, the ALJ did not err to the extent he did not
explicitly reference this report.

34

**United States District Court**
For the Northern District of California

1   *v. Astrue*, 674 F.3d 1104, 1115 (2012).  In determining whether an error was harmless, district

2   courts should consider whether the error was "inconsequential to the ultimate nondisability

3   determination."  *Id.* at 1117 (holding that ALJ's failure to provide "specific witness-by-witness

4   reasons for rejecting… lay testimony did not" warrant reversal where it "did not alter the ultimate

5   nondisability determination").[23]

6          Here, there are questions as to whether: (1) Dr. Sanchez and Dr. Hyunh's reports were

7   relevant and probative, and (2) the ALJ's failure to consider these reports amounted to harmless

8   error.  With respect to Dr. Sanchez's report, Dr. Sanchez appears to have met with Plaintiff in

9   December 2004.  *See* Tr. 640.  Dr. Sanchez's report is consistent in many respects with the ALJ's

10  ultimate determination.  *See e.g. id.* 643-44 (finding that Plaintiff "would not have any difficulties

11  being socially appropriate," and was "able to perform simple tasks.").  Nevertheless, Dr. Sanchez:

12  (1) diagnosed Plaintiff with a "pain disorder with both psychological factors and a general medical

13  condition," (2) stated Plaintiff might find it difficult to concentrate and keep up with the pace of a

14  working environment "given her preoccupation with pain," and (3) stated that "he was unable to

15  determine if [Plaintiff] is able to tolerate the stress of an 8-hour day, 40 hour workweek on a

16  consistent basis."  *Id.* 643.  While the ALJ mentioned the first statement in his step two analysis, he

17  did not discuss the latter two statements in either step two or in connection with determining

18  Plaintiff's RFC (step four).  The latter two statements directly pertain to limitations which would

19  affect Plaintiff's ability to work.  Thus, Dr. Sanchez's statements appear to be "probative"

20  (*Vincent*, 739 F.2d at 1394-95), and, accordingly, may have merited some discussion. *See Bayliss*,

21  427 F.3d at 1216 (holding that the ALJ must provide "specific and legitimate reasons" for rejecting

22  testimony of treating or examining physician).

23  _____

24  [23] In *Stout v. Commissioner, Social Security Administration*, the Ninth Circuit used slightly more
    restrictive language in describing the harmless error standard.  *Id.*, 454 F.3d 1050, 1056 (9th Cir.

25  2006) (holding that "a reviewing court cannot consider the error harmless unless it can confidently
    conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a

26  different disability determination").  However, in *Molina*, the Court cautioned that the formulation
    of the harmless error standard in *Stout* must not be construed so restrictively as to result in some

27  violations being deemed "per se prejudicial," and reaffirmed that an error is harmless if it is
    "inconsequential to the ultimate nondisability determination."  *Id.*

28

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

United States District Court
For the Northern District of California

1    Similar issues exist with respect to Dr. Hyunh's December 2004 report.  Dr. Hyunh met

2  with Plaintiff between November 2004 and at least February 2005.  Tr. 718.  In December 2004,

3  Dr. Hyunh filled out the same one page form as Dr. Snyder.  *Id.* 720.  Dr. Hyunh stated that

4  Plaintiff has a disorder which "limits… her employability" and diagnosed Plaintiff with "major"

5  depression.  *Id.*  Dr. Hyunh's report further stated, under "objective evidence," that Plaintiff

6  showed "poor initiative and concentration."  *Id.*  These findings are probative to the extent they

7  cast doubt on the testimony of the other physicians in the record.  *See e.g. id.* 869 (Dr. El-Sokkary

8  holding that Plaintiff "was able to maintain a sufficient level of *concentration*, persistence, and

9  pace to do basic work…" (emphasis added)).  The Court believes that the ALJ likely could have

10  discounted this report in light of: (1) Doctors Kollath, El-Sokkary, and Acenas' reports, and (2) a

11  February 2005 letter from Dr. Hyunh (which the ALJ did discuss in step two (*id.* 24)) stating that

12  Plaintiff, while "taking her psychiatric medications" was "stable" and "able to express her thoughts

13  effectively" (*see id.* 718).  Nevertheless, the ALJ failed to explicitly do so.[24]  Given the arguable

14  relevance of Dr. Hyunh's December 2004 report, this failure may not have been inconsequential.[25]

15    Ultimately, because the Court intends to remand so that the ALJ can more explicitly

16  address the diarrhea severe impairment, the Court also finds it worthwhile to remand to allow the

17

18  [24] The Court acknowledges that the ALJ noted in his RFC discussion that there were "several
usually 1-page forms which mention that the claimant [is] 'disabled' without citation of ongoing
clinical and laboratory findings, no discussion of onset, projected duration or both."  *Id.* 28.

19  However, the ALJ did not explicitly identify the reports to which he referred.  Moreover, Dr.
Hyunh's report appears to be supported by findings to the extent he states, under the portion of the

20  form pertaining to "objective evidence," that Plaintiff showed "poor initiative [and] concentration."
*Id.* 720.  Furthermore, Dr. Hyunh provides a projected duration of Plaintiff's condition of six

21  months.  *Id.*  Accordingly, it is unclear whether the ALJ was even referring to Dr. Hyunh's report in
making his statement regarding the "1-page forms."  *Id.* 28.

22
[25] Defendants argue that because Dr. Hyunh did not predict that Plaintiff's condition would last for

23  12 months (as is required for a condition to qualify as an impairment), Dr. Hyunh's report is not
relevant.  Mot. at 6 n.3.  The Court disagrees.  As an initial matter, the ALJ agreed that depression

24  was a severe impairment based on other evidence in the record.  Tr. 23.  Thus, Dr. Hyunh's report
was not necessary to find that depression was an impairment.  That said, regardless of whether Dr.

25  Hyunh's report predicted Plaintiff's depression would meet the 12 month duration requirement, Dr.
Hyunh's report may have been relevant to the extent it shed light on how Plaintiff's depression

26  would affect Plaintiff's ability to perform work related functions, *e.g.* concentrating.  Tr. 720
(noting Plaintiff's "poor… concentration").  Thus, the Court finds that remand is appropriate to

27  allow the ALJ to fully address Dr. Hyunh's report.

28

36

ALJ to more explicitly address the opinions of Dr. Hyunh and Dr. Sanchez.  In remanding, the Court acknowledges that this record is extensive, that Plaintiff's arguments are often difficult to discern and that the ALJ did a comprehensive analysis.  The Court remands only to ensure that all relevant opinions are fully addressed.

### e. Whether Plaintiff's Limitations to Her Right Wrist Allowed Her to Work as a Parking Lot Attendant, Cashier, or Assembler

The Court finds that the ALJ erred to the extent he concluded that Plaintiff could work as a cashier or assembler notwithstanding the injuries to her right wrist.  The ALJ determined that, notwithstanding Plaintiff's restricted use of her right wrist, Plaintiff would be capable of working as a parking lot attendant, clerk/cashier, and assembler.  Tr. 31.  The ALJ stated that this determination was based on testimony from the vocational expert, Ms. McQuary.  *Id.*  However, Ms. McQuary's testimony did not support this conclusion.

At the June 2008 hearing, Ms. McQuary initially provided three examples of sedentary work that Plaintiff might be able to perform: parking lot attendant, clerk/cashier, and assembler. *Id.* 1134.  In an effort to determine which of these jobs Plaintiff could perform with her wrist injury, the ALJ asked Ms. McQuary which of the jobs would not require "more than occasional use of the hands." *Id.* 1134.  Ms. McQuary testified that both the clerk/cashier and assembler positions *would* require more than occasional use of the hands.  *Id.*  However, Ms. McQuary testified that the parking lot attendant job would not require more than occasional use of the hands.  *Id.* ("Q: And would any of those jobs you mentioned require more than occasional use of the hands?... A: All of them.  Q: All would require? A: Well, perhaps not the parking lot attendant.  That would depend.  All except the parking lot attendant.").  Thus, Ms. McQuary's testimony establishes only that Plaintiff would be capable of performing the parking lot attendant job.  To the extent the ALJ relied on this testimony to show that Plaintiff would be capable of working as a clerk/cashier or assembler, the ALJ erred.[26]

---

[26] The Court notes that the ALJ's hypothetical to Ms. McQuary may have been phrased more broadly than was required.  Plaintiff's hand limitation applied only to her right hand and prevented her from "lifting [or] carrying 10 lbs. [more than] occasionally."

**United States District Court**
For the Northern District of California

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

**B.      Plaintiff's New Evidence**

As set forth above, the Court believes this case must be remanded.  However, prior to remanding, the Court must consider certain new evidence that Plaintiff has presented.

Plaintiff has submitted evidence, which is not in the record, which Plaintiff contends was "filed, faxed, emailed[,] or transmitted to the" Appeals Council after the ALJ's determination but was not considered by the Council.  *See* ECF No. 10 at 2-3.  Indeed, Plaintiff appears to contend that this evidence was deliberately omitted from the record.  *See* Emergency Motion at 11. Plaintiff attaches this evidence as Exhibits 1.0-2.97 to Plaintiff's Emergency Motion.

"If new and material evidence is submitted [to the Appeals Council], the Appeals Council shall consider the additional evidence… [if] it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).  If evidence is submitted to the Appeals Council, and the Appeals Council includes it in the record, then this Court is obliged to "consider [it] in determining whether the Commissioner's decision is supported by substantial evidence."  *Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1159-60 (9th Cir. 2012).  In contrast, evidence that has not been made part of the administrative record may be considered only if: (1) it is material and (2) the claimant has shown "good cause" for having failed to present the new evidence to the ALJ earlier.  *Mayes v. Massanari*, 276 F.3d 453, 462 (9th Cir. 2001).

Here, Plaintiff's Emergency Motion attempts to introduce evidence which is not part of the administrative record.[27]  While, Plaintiff contends that this information was "filed, faxed, emailed[,] or transmitted to the" Appeals Council (*see* ECF No. 10 at 2-3) and that the Appeals Council deliberately omitted it from the record (*see* Emergency Motion at 11), Plaintiff's moving papers do not appear to provide any factual support for these allegations.[28]  Accordingly, the Court

---

[27] The Court notes that while Plaintiff appears to contend that all the exhibits to the Emergency Motion were omitted from the record, a number of the exhibits were included in the record before the ALJ and, in some cases, were explicitly addressed by the ALJ in his decision.  *See e.g.* Emergency Motion, Ex. 2.4 (May 5, 2004 letter from Dr. Lieberson); Tr. 27 (considering May 5, 2004 letter from Dr. Lieberson); Emergency Motion, Ex. 2.65; Tr. 481.

[28] Indeed, the Court notes that the Appeals Council appears to have considered new evidence where it was actually provided to them.  Specifically, the Appeals Council considered "Exhibits 1-18," which were attached to Plaintiff's initial 2009 filing before the District Court.  *See* Tr. 9 (stating "[w]e… considered the information you filed with your initial filing with the District Court, which

38

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS

1  must treat Plaintiff's evidence as new evidence.  In order for such evidence to be considered,

2  Plaintiff must show that it is both material and that Plaintiff had good cause for not presenting it to

3  the ALJ earlier.  *Mayes*, 276 F.3d at 462.  The Court finds that Plaintiff has not met this burden.

4      First, Plaintiff has failed to show that Plaintiff's new evidence is material.  "To be material

5  under section 405(g), the new evidence must bear 'directly and substantially on the matter in

6  dispute.'"  *Id.* (internal citations omitted).  There must be "a 'reasonable possibility' that the new

7  evidence would have changed the outcome of the administrative hearing."  *Id.*  Moreover, the new

8  evidence must be "probative of [Plaintiff's] condition as it existed at the relevant time—at or

9  before the disability hearing."  *Sanchez v. Sec'y of Health & Human Services*, 812 F.2d 509, 511

10  (9th Cir. 1987).

11      Here, the Court has reviewed the exhibits attached to Plaintiff's Emergency Motion and has

12  determined that the vast majority of the evidence is not material as there is not a "reasonable

13  possibility" that this new evidence would have changed the outcome of the administrative hearing.

14  *Mayes*, 276 F.3d at 462.  Significantly, many of the records are from one or more years after the

15  ALJ made his determination, and thus are not necessarily probative of Plaintiff's condition at the

16  time of the hearing.  *See, e.g.*, Emergency Motion at "Ex. 2.6" (form dated 8/7/2011 diagnosing

17  lower extremity pain); "Ex. 2.9" (form dated 11/03/2010 diagnosing acute pain in lower

18  extremities).  Moreover, many of the records are partial or incomplete.  *See, e.g.*, Emergency

19  Motion, Ex. 2.8 (containing only page 2 of a diagnostic imaging report dated 3/18/2009).

20      Furthermore, many of the reports only provide preliminary examinations, are not supported

21  by clinical findings, and/or do not provide any indication as to whether Plaintiff's conditions meet

22  the 12-month duration requirement.  For example, with respect to Plaintiff's fibromyalgia, one of

23  Plaintiff's exhibits includes an October 2009 report from Dr. Peter Lin, which suggests that

24  Plaintiff could have fibromyalgia or potentially some form of neuropathy, but does not

25  _____

26  you labeled Exhibits 1-18").  The Appeals Council found that this information was not material and
   declined to make it part of the administrative record.  *Id.*  This Court agrees that Exhibits 1 through
   18 are not material.  The exhibits include *inter alia* police reports, requests for restraining orders,

27  and an automobile accident report.  *See* Case No. 09-CV-00974, ECF No. 1, Exs. 1-18.  These

28  records are not relevant to the issue of whether Plaintiff is entitled to disability benefits.

39

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

affirmatively diagnose either.  *See* Emergency Motion, Ex. 2.1.  Subsequently, in February 2010,

Dr. Lin filled out a "Non-Formulary Drug Request Form" prescribing Percocet.  *Id.*  Dr. Lin listed

"generalized pain - fibromyalgia" under "diagnosis."  However, Dr. Lin did not support his

diagnosis with any clinical or durational findings, nor does he purport to have performed any of the

recognized diagnostic tests for fibromyalgia (*e.g.* the tender point test).[29]  In light of these

deficiencies, the Court is not persuaded that Plaintiff's new evidence is material or that there is a

reasonable possibility that the ALJ or the Appeals Council's decisions would have been different if

this evidence had been considered.  *Mayes*, 276 F.3d at 462.

Plaintiff has also failed to show good cause for not presenting the evidence earlier.  "A

claimant does not meet the good cause requirement by merely obtaining a more favorable report

once his or her claim has been denied.  To demonstrate good cause, the claimant must demonstrate

that the new evidence was unavailable earlier." *Id.* at 463.  Here, Plaintiff has not adduced any

facts showing good cause for Plaintiff's failure to present the new evidence earlier.  While Plaintiff

claims that this evidence was provided to the Appeals Council and that the Appeals Council

deliberately omitted it, as set forth above, these claims are not supported by evidence.  In light of

Plaintiff's failure to establish the materiality of Plaintiff's new evidence and good cause for failing

to present this evidence earlier, the Court declines to order that the ALJ consider this new evidence

on remand.  Instead, the Court leaves it within the Commissioner's discretion as to whether to

incorporate Plaintiff's new evidence into the record.[30]

## C.    Failure to Develop the Record

Plaintiff also contends that the ALJ failed to properly develop the record, as required by the

October 2007 Appeals Council's decision.  *See* ECF No. 20 at 3; ECF No. 21 at 2.  However, the

---

[29] Plaintiff attaches two other documents relating to fibromyalgia but they suffer from similar
deficiencies.  *See* Emergency Motion, Ex. 2.0 (certifying Plaintiff to obtain a permanent disability
placard and listing "fibromyalgia" under "diagnosed disease or disorder," but failing to provide
clinical findings); *id.*, Ex. 2.3 (undated report [presumably 2009 based on statements contained
therein] providing a "*[t]entative* [d]iagnosis of FMS" (emphasis added)).

[30] The Court also considered a number of additional exhibits which were attached to Plaintiff's
petition for relief.  *See* Compl., Exs. A-K.  These exhibits consist primarily of various court filings
and are not material to this matter.

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART
AND DENYING IN PART PLAINTIFF'S MOTIONS

records shows that the ALJ made a number of requests for new information, most of which did not yield any results. Tr. 21. Plaintiff has failed to clearly identify any evidence that the ALJ could have obtained, but did not. Accordingly, Plaintiff's argument fails.

## IV.    CONCLUSION

Because the ALJ erred in failing to consider the effects of Plaintiff's diarrhea on Plaintiff's RFC, Defendant's motion for summary judgment is DENIED. The Court remands this case so that the ALJ can make findings as to: (1) what if any limitations would arise from Plaintiff's diarrhea, and (2) how any limitations arising from Plaintiff's diarrhea would affect Plaintiff's capacity for sedentary work; and (3) the significance of Dr. Hyunh and Dr. Sanchez's reports. Additionally, on remand, the ALJ should consider soliciting additional testimony from the vocational expert concerning Plaintiff's ability to work as a clerk/cashier or assembler or, alternatively, not include these jobs in the ALJ's description of which jobs Plaintiff has the capacity to perform. Otherwise, Plaintiff's motions are DENIED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 28, 2013

_Lucy H. Koh_
LUCY H. KOH
United States District Judge

United States District Court
For the Northern District of California

41

Case No.: 11-CV-04428-LHK
ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS